FILED
OCT 03 2005
U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>DAVID W. BALL,<br><br>              Debtor.<br><br>DAVID W. BALL,<br><br>              Plaintiff,<br>vs.<br><br>KMA ASSOCIATES, L.L.C., an Arizona limited liability company; QUALITY LOAN SERVICES CORPORATION, a California corporation; BANK ONE OF ARIZONA, an Arizona corporation; JANE AND JOHN DOES ONE THROUGH FIVE; XYZ CORPORATIONS ONE THROUGH FIVE,<br><br>              Defendants. | Chapter 13<br><br>No. 4-03-bk-03945-JMM<br><br>Adversary No. 4-05-ap-00118-JMM<br><br>**MEMORANDUM DECISION RE: KMA MOTION FOR SUMMARY JUDGMENT**<br><br>(Opinion to Post) (Under Advisement since September 13, 2005) |

On September 13, 2005, this court heard argument on KMA Associates' ("KMA") Motion for Summary Judgment. KMA was represented by Clarissa Reiman and Andrew Abraham; the Debtor was represented by Michael Baldwin. After considering the entire record in this adversary proceeding, the law, and arguments of counsel, the court now rules.

### PROCEDURE

Pursuant to FED. R. CIV. P. 56, made applicable to bankruptcy proceedings by FED. R. BANKR. P. 7056, a party must, in order to prevail on summary judgment, demonstrate that there are no genuine issues of material fact which are in dispute. If there are, then a trial is required to hear such disputed issues, and to determine which version of the story is more likely than not to be the truth.

## UNDISPUTED FACTS

The parties have filed pleadings setting forth what occurred in this case, and the following facts appear to be undisputed. Even if there is some area of disagreement, the court views those facts in a light most favorable to the non-moving party, the Debtor.

Accordingly, the court finds the undisputed facts to be:

1. David Ball ("Debtor") owns residential property located at 665 E. Rudasill Road, Tucson, Arizona.

2. Debtor defaulted on a second position note held by Bank One of Arizona ("BOA").

3. Because of the default, Quality Loan Services Corporation ("QLSC"), as trustee, scheduled a trustee's sale for July 21, 2003 at 11:00 a.m.

4. Debtor filed a bankruptcy petition on July 21, 2003 at 10:45 a.m., just minutes prior to the trustee's sale of the property.

5. QLSC conducted the sale at the appointed time, and sold the property to KMA.

6. KMA was a *bona fide* purchaser at the sale, with no notice that the bankruptcy had been filed 15 minutes earlier.

7. The next day, KMA paid the bid price.

8. On July 29, 2003, KMA sent a representative to Debtor's house and informed Debtor that he no longer owned the house and had five days to move out.

9. Debtor informed the KMA representative during the July 29, 2003 meeting at his residence that he had filed bankruptcy on July 21, 2003, *prior* to the alleged sale, and that therefore KMA was not the owner of his residence.

10. On or about August 25, 2003, QLSC, acting on behalf of KMA and/or BOA, recorded the Trustee's Deed Upon Sale.

11. Ten months passed, and no one did anything.

12. On or about May 22, 2004 Ronald Ryan ("Ryan"), Debtor's prior attorney, mailed

2

a letter to KMA regarding the bankruptcy petition, to an address that KMA states was not the correct address, and to the title company that handled the prepetition foreclosure proceedings. KMA has denied receipt of Ryan's letter on behalf of the Debtor.

    13. In pertinent part, the letter stated:

> The . . . Trustee's Deed is void because of the bankruptcy filed on 7/21/2003 at 10:43 a.m. . . . The presence of this Deed is a cloud on title and a violation of the bankruptcy stay. Please file a Rescission of Trustee's Deed. . . . If you disagree, call me. (*See* KMA's Exhibit C, Ronald Ryan's May 22, 2004 letter.)

    14. Seven more months passed, and again, no one did anything.

    15. On or about December 14, 2004, Debtor terminated Ryan as counsel, and hired Michael Baldwin ("Baldwin"), his current counsel.

    16. On or about December 14, 2004, Debtor's new attorney, Baldwin, mailed a letter to KMA regarding what he viewed as an improper recording of the Trustee's Deed Upon Sale.

    17. In pertinent part, Baldwin demanded:

> [T]hat KMA, Associates, LLC and or Quality Loan Service Corp. take immediate action to immediately transfer the property out of the name of KMA Associates, LLC and back into the name of David W. Ball and Claudia R. Corum, and to make clear in the County Recorder's record that KMA never in fact had any interest in the subject property, and that the title has remained in the name of David W. Ball and Claudia R. Corum uninterrupted, and that the Trustee's Deed Upon Sale . . . was and is *void ab initio*. If you have not provided to my office proof that this has been accomplished by recordation satisfactory to David Ball, and provided same no later than 5:00 PM on Monday, December 27, 2004, I will be forced to bring an adversary action in bankruptcy court to accomplish that end. (*See* KMA's Exhibit D, Michael Baldwin's December 14, 2004 letter.)

    18. KMA's counsel responded on December 16, 2004. In pertinent part, that letter offered to reconvey the property by quit claim deed back to its grantor, QLSC. It also noted:

> The best that my client can do is reconvey, by quit claim deed, its interest in the subject property to the Grantor on the Trustee's Deed, Quality Loan Service Corp. What I believe you need is for Quality Loan to record a document in essence rescinding the Trustee's Deed as being issued in violation of the automatic stay. Alternatively, you could submit an appropriate form of order to Judge Marlar that is in recordable form to which my client would be willing to stipulate so long as it effectively, is

3

not requiring anything further from my client than an acknowledgment that it makes no claim against the subject title. (*See* KMA's Exhibit A, Affidavit of Gregg Reichman, and Exhibit E, Andrew Abraham's December 16, 2005 letter.)

19. KMA's letter did not make, as a condition to reconveyance, that a release be executed by the Debtor.

20. Three more months passed, and again there is no indication that the parties had any further contact. No pleadings were filed with the bankruptcy court.

21. On or about March 16, 2005, QLSC recorded a Notice of Rescission, thereby effectively returning title of the property to the Debtor.

22. On or about March 17, 2005, Debtor filed the instant lawsuit against KMA, alleging willful violations of the automatic stay, and seeking damages from it.

## **THE LAW**

### **The Automatic Stay**

Section 362 provides for an automatic stay upon the filing of a bankruptcy petition under any chapter of the Bankruptcy Code. Section 362 stays a wide range of actions that would affect or interfere with property of the estate. The stay is effective automatically and immediately upon the filing of a bankruptcy petition. Formal service of process is not required, and no particular notice need be given in order to subject a party to the stay. *See Job v. Calder (In re Calder)*, 907 F.2d 953 (10th Cir. 1990); *Smith v. First Am. Bank, N.A. (In re Smith)*, 876 F.2d 524 (6th Cir. 1989).

Section 362(a) provides, in pertinent part, an automatic stay, applicable to all entities, of

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . . .

4

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . .

(4) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; . . . .

**Actions in Violation of Stay are Void, Not Voidable**

The Ninth Circuit has held that "violations of the automatic stay are void, not voidable." *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. BAP 1992). The automatic stay "is designed to protect debtors from all collection efforts while they attempt to regain their financial footing." *Id.* Congress has made clear that:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6296-97.

If violations of the automatic stay were merely voidable, and not void, creditors would be encouraged to violate the automatic stay:

> [T]he fundamental importance of the automatic stay to the purposes sought to be accomplished by the Bankruptcy Code requires that acts in violation of the automatic stay be void, rather than voidable. Concluding that acts in violation of the automatic stay were merely voidable would have the effect of encouraging disrespect for the stay by increasing the possibility that violators of the automatic stay may profit from their disregard for the law, provided it goes undiscovered for a sufficient period of time.

*In re Garcia*, 109 B.R. 335, 340 (N.D.Ill 1989) (footnote omitted). Therefore, when a creditor violates the automatic stay the debtor is under no obligation to take any proactive role in order to have the act declared void; the act is void from the instant the act occurs.

5

## Willful Violations of the Automatic Stay

Section 362(h) creates a statutory remedy for individual debtors who are injured by a violation of the automatic stay. It provides:

> (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

"The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay." *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995).

"An award of actual damages under § 362(h) requires a showing by the debtor that she sustained an injury from a 'willful' violation of the stay." *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 7-8 (9th Cir. BAP 200), citing *Fernandez v. GE Capital Mortgage Servs., Inc. (In re Fernandez)*, 227 B.R. 174, 180 (9th Cir. BAP 1998) *aff'd mem.*, 208 F.3d 220 (9th Cir. 2000). "A 'willful violation' does not require specific intent to violate the automatic stay." *Roman*, 283 B.R. at 8, citing *McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 167 (9th Cir. BAP 1995). "A violation of the automatic stay is 'willful' if 1) the creditor knew of the stay and 2) the creditor's actions, which violated the automatic stay, were intentional." *Roman*, 283 B.R. at 8, citing *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989); *Expeditors Int'l of Wash., Inc. v. Colortran, Inc. (In re Colortran, Inc.)*, 210 B.R. 823, 826 (9th Cir. BAP 1997), *aff'd in part and vacated in part on other grounds*, 165 F.3d 35 (9th Cir. 1998).

## Duty of BFP to Unwind Sale

Without any question, the automatic stay, which went into effect when Debtor filed bankruptcy, prohibited BOA, the creditor, from taking any further action against Debtor. However, the issue raised is whether KMA, a bona fide purchaser at a trustee's sale, had a duty to affirmatively

6

unwind the sale of debtor's residence to it, or whether KMA's inaction violated the automatic stay?

"As interpreted by the Ninth Circuit Court of Appeals, '§ 362(a)(1) imposes an *affirmative duty* to *discontinue* post-petition collection actions.'" *In re Daniels*, 316 B.R. 342, 350 (Bankr.D.Idaho 2004), citing *In re Roman*, 309 F.3d at 1215. "Implicit in this command is a creditor's responsibility to act to stay further proceedings in process at the time a bankruptcy case is commenced, or in the words of the court, to 'automatically dismiss or stay such proceedings or risk possible sanctions for willful violations' of the automatic stay." *In re Daniels*, 316 B.R. 342, 350 (Bankr.D.Idaho 2004), citing *In re Roman*, 309 F.3d at 1214.

## APPLICATION OF THE FACTS TO THE LAW

**1. Did KMA violate the automatic stay at the time of the trustee's sale by bidding on the property?**

Debtor filed bankruptcy at 10:43 a.m. on July 21, 2003. The Trustee's Sale was held at approximately 11:00 a.m. on the same date. KMA successfully bid on the subject property. Since the automatic stay is effective automatically and immediately upon the filing of a bankruptcy petition, Debtor's automatic stay became effective as of 10:43 a.m. on July 21, 2003. KMA's act of successfully bidding on the property was a violation of the automatic stay because it was an "act to obtain possession of property of the estate . . . ." Section 362(a)(3). Even though KMA had no notice of the bankruptcy or the automatic stay, no notice need be given in order to subject a party to the automatic stay. Therefore, KMA's successful bid on the property was a violation of the automatic stay. Because violations of the automatic stay are void, and not merely voidable, the trustee's sale of the property to KMA was *void ab initio*.

7

Case 4:05-ap-00118-JMM    Doc 26    Filed 10/03/05    Entered 10/03/05 16:53:50    Desc
Main Document    Page 7 of 12

**2. Did KMA *willfully* violate the automatic stay at the time of the trustee's sale by bidding on the property?**

KMA's violation of the automatic stay would be "willful" if (1) KMA knew of the stay and (2) KMA's actions, which violated the automatic stay, were intentional. Viewing the facts in a light most favorable to Debtor, KMA did not have notice of the automatic stay at the time it bid on the property at the trustee's sale. Debtor does not argue nor do the facts show, that KMA had notice that Debtor filed bankruptcy. Therefore, since KMA did not have notice of the automatic stay, KMA's successful bid on the property was not a willful violation of the automatic stay. Partial summary judgment will be granted on this issue in favor of KMA.

**3. Was it a violation of the automatic stay, on July 29, 2003, for a KMA associate to tell Debtor to vacate the property?**

Debtor argues that he first gave KMA notice of his bankruptcy when a KMA associate went to the property and told Debtor to vacate the property. Debtor argues that during this July 29, 2003 meeting, Debtor informed the KMA associate that he had filed bankruptcy prior to the trustee's sale and that KMA was not the owner of the residence. Therefore, KMA did not have notice when its associate told Debtor to vacate the property. However, no notice need be given in order to subject a party to the automatic stay. KMA violated the automatic stay by attempting to obtain possession of property of the estate, Debtor's residence, if it did so wilfully.

Again, KMA's violation of the automatic stay would be "willful" if (1) KMA knew of the stay and (2) KMA's actions, which violated the automatic stay, were intentional. Clearly, KMA intended to tell Debtor to vacate the property and therefore its act was intentional. However, KMA must have known the automatic stay was in effect in order for its violation of the automatic stay to be willful. Debtor argues that he first gave notice to KMA when the KMA associate came to the property and told him he had five days to vacate. Debtor readily admits KMA did not have notice of the automatic

stay when the KMA associate came to the property and told him to vacate. Therefore, KMA's violation of the automatic stay in telling Debtor to vacate the property, was not a willful violation of the automatic stay. Partial summary judgment will be granted on this issue in favor of KMA.

### 4. Was it a willful violation of the automatic stay for QLSC, acting on behalf of Bank One, to record the Trustee's Deed Upon Sale on August 25, 2003?

If QLSC acted on behalf of KMA in filing the Trustee's Deed Upon Sale on August 25, 2003, KMA willfully violated the automatic stay. KMA claims that it did not have notice of Debtor's bankruptcy until it received Michael Baldwin's December 14, 2004 letter. Debtor asserts that KMA had notice of Debtor's bankruptcy when a KMA associate appeared at Debtor's residence on July 29, 2003 and told Debtor to vacate the property. Viewing the facts in a light most favorable to Debtor, there appears to exist a genuine issue of material fact as to whether KMA directed QLSC to record the Trustee's Deed Upon Sale, after receiving knowledge of the automatic stay. Therefore, summary judgment on this issue will not be granted, and the facts will need to be developed at trial.

### 5. Assuming KMA received Ryan's May 22, 2004 letter, was KMA's inaction a willful violation of the automatic stay?

The Ninth Circuit imposes an affirmative duty to discontinue post-petition collection actions. *In re Roman*, 309 F.3d at 1215. The question here is whether KMA, a non-creditor, having notice that the sale violated the automatic stay, had a duty to unwind the sale?

While there is no controlling law on this issue, one bankruptcy court has held that a creditor, after being notified of debtor's filing, committed a willful violation of the automatic stay, by refusing to take any steps to quash an arrest warrant that it had obtained as part of its post-judgment collection efforts, instead insisting that it was up to the debtor to seek such relief from the state court that issued the warrant. *In re Daniels*, 316 B.R. 342 (Bankr.D.Idaho 2004).

9

*Daniels* can be distinguished from the case at bar. In *Daniels*, when the debtor asked the creditor to act to protect him from arrest the creditor refused and instead sought to shift the burden to debtor to quash the warrant. Here, KMA argues that it never received Ryan's May 22, 2004 letter because it was sent to the wrong address. There was no blatant refusal to help Debtor rescind the sale. Indeed, after KMA received Baldwin's December 14, 2004 letter, KMA offered to rescind the Deed. Additionally, in *Daniels*, the creditor initiated the process that culminated in the state court issuing a warrant for the debtor's arrest. Here, KMA was merely a bona fide purchaser at a foreclosure sale, with no notice that Debtor had filed bankruptcy. QLSC, as trustee for Bank One, noticed and conducted the trustee's sale.

In addition, this court does not wish to hold that a BFP has an affirmative duty to unwind the results of a violation of the automatic stay. This holding would leave the Debtor with too much power. For instance, in a situation such as this, a debtor, who knows the sale is void and continues to possess his residence, could refuse to obtain a court order stating that the recording was void, knowing that the BFP had an affirmative duty to unwind the sale itself. If the BFP then failed to unwind the sale, for whatever reason, Debtor could continue to live in his home, file a motion to hold that the BFP willfully violated the automatic stay, and collect punitive damages. This court does not believe that the intent of Congress, nor the cases, go that far.

Therefore, this court finds and concludes KMA's inaction, after receiving Ryan's May 22, 2004 letter was not a willful violation of the automatic stay, and KMA is entitled to summary judgment on this issue.

### 6. After KMA received Baldwin's December 14, 2004 letter, did KMA's offering to file a stipulation rescinding the deed relieve KMA of liability?

Debtor did not take KMA up on its offer to quit claim the parcel to him. His failure to do so does not create liability, for events occurring thereafter, for KMA. KMA shall be granted summary

10

judgment on this issue.

**7. Once KMA received Baldwin's December 14, 2004 letter, is there anything about KMA's reply letter that violated the automatic stay?**

The court, after reviewing KMA's letter, does not agree with Debtor that it required a release. In any event, Debtor could have applied to the court for effective relief short of filing a lawsuit. The court therefore will enter summary judgment on behalf of KMA on this issue.

## RULING

KMA'S Motion for Summary Judgment shall be granted in part. KMA should file a separate order within 10 days. Trial shall proceed on those issues remaining.

DATED: **OcT. 3, 2005**

/s/ James M. Marlar
JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE

COPIES served as indicated below this **3rd** day of **October** 2005, upon:

| | |
|---|---|
| 1 | Michael Baldwin |
| | 177 N. Church, Suite 913 |
| 2 | Tucson, AZ 85701-1120 |
| | Attorneys for Debtor/Plaintiuff |
| 3 | Email Michael.Baldwin@azbar.org |
| 4 | Andrew Abraham |
| | Clarissa B. Reiman |
| 5 | Burch & Cracchiolo, P.A |
| | 702 E. Osborn, #200 |
| 6 | Phoenix, AZ 85014 |
| | Attorneys for KMA |
| 7 | Email aabraham@bcattorneys.com |
| | Email creiman@bcattorneys.com |
| 8 | |
| | Paul M. Levine |
| 9 | McCarthy Holthus Levine |
| | 3636 N. Central Ave., #1100 |
| 10 | Phoenix, AZ 85012 |
| | Email: paul.levine@azbar.org |
| 11 | Attorneys for Quality Law Service Corporation |
| | and Bank One, Arizona, N.A. |
| 12 | |
| | Office of the United States Trustee |
| 13 | 230 North First Avenue, Suite 204 |
| | Phoenix, AZ 85003-1706 |
| 14 | U.S. Mail |

By _MB Thompson_
   Judicial Assistant